## STATE *v.* CLARK.

*Bigamy—Indictment—Marriage in fact.*

An indictment upon Gen. Stats., ch. 256, sec. 5, alleged that the defendant being a married man, and having a lawful wife alive, did, &c., cohabit with one C. M. J., single woman, &c. *Held*, sufficient after verdict.

On the trial of such an indictment, the testimony of persons who were present and witnessed the former marriage ceremony is admissible to show the fact of such marriage.

On the question of handwriting, the jury may compare the writing in dispute with one admitted to be genuine.

Where the instructions to the jury were such that in any view they must have found the fact of one valid subsisting marriage at the time of the unlawful cohabitation charged, it is no ground of exception that the jury were erroneously told that there was evidence from which they might find that the first of two former marriages had been cancelled by a divorce.

INDICTMENT, charging that the respondent, on the first day of April, A. D. 1871, at Keene, in the county of Cheshire aforesaid, with force

and arms, and from said day until the day of the finding of this indict-ment, did and ever since has continued to and still does lewdly and lasciviously associate and cohabit with one Charlotte M. Johnson of said Keene, single woman ; he, the said Thaddeus B. Clark, during all the time aforesaid, being a married man and having a lawful wife alive, who had not during any of said time been absent and not heard of or from for the space of three years together, nor reported and generally believed to be dead, and from whom the said Thaddeus B. Clark has never been legally divorced, and his marriage with whom prior to all the time aforesaid did not take place within the age of consent con-trary to the form of the statute in such case made and provided, and against the peace and dignity of the state.  The respondent pleaded not guilty, and upon the trial offered himself as a witness, and testi-fied.  Upon his cross-examination, two letters were exhibited to him purporting to have been written by him to the Hudson woman herein-after mentioned, but he denied that they were written by him.  A letter was then exhibited to him purporting to have been written by him to a third person, which he admitted was genuine.  The counsel for the State then proposed to read the Hudson letters to the jury, for them to consider, if, upon a comparison of those letters with the genu-ine one, they should be satisfied that they were all written by the same person.  To this the respondent objected ; but the court allowed the letters to be read, remarking to the jury that they must not then draw any inference whatever from them, because it might be that they would not, upon a comparison of the three letters, be satisfied that the respon-dent wrote the two Hudson letters.  To this the respondent excepted. Subsequently the Hudson woman testified that she received the two letters by mail ; that she was well acquainted with the respondent's handwriting, and that those letters were in his handwriting.

The State offered as a witness Jennie M. Clark, who testified that on May 3, 1866, her name was Jennie M. Hudson ; that she was then a widow ; that on that day she was married to the respondent, at Bing-hampton, New York, by F. A. Durkee, a justice of the peace, and took from said Durkee a certificate of said marriage.  A copy of this cer-tificate was read in evidence without objection.  Said Durkee was called by the respondent, and testified that he had been a counsellor at law in Binghampton about twenty years ; that he was a justice of the peace on said May 3, 1866, and for some time before and after, and in the habit of solemnizing marriages ; and that he married the Hudson woman on that day to a man calling his name Clark, but that he was of the opinion that the respondent was not the man.  The name inserted in the certificate was Thomas Clark.  The respondent testified that he had sometimes gone by the name of Thomas Clark.  The re-spondent testified, on cross-examination, that in the spring of 1864 he was married to Marietta Norton, in Elmira, New York, by James Dewitt, who was a justice of the peace ; that he then had no living wife nor she any living husband ; that that marriage was a legal marriage, he supposed.  No objection was made, until after a verdict of guilty

had been returned, to the validity of the Norton marriage, and none to the validity of the Hudson marriage, except that the man to whom the Hudson woman was married by Durkee was not the respondent.

The court instructed the jury that they were authorized to find that the Norton marriage was a legal one ; also, that they were authorized to find that the Hudson marriage was a legal one if the Norton woman had been lawfully divorced from the respondent previous to May 3, 1866.    To these instructions the respondent excepted, upon the ground that there was no evidence that, by the laws of the state of New York at the time of those marriages, a justice of the peace was · authorized to solemnize marriages in that state.    The respondent did not require the State to prove that he cohabited with the Johnson woman as charged in the indictment, but admitted it.    There was no evidence tending to show that the Norton woman had been divorced from the respondent, except what was derived from her own declarations.    These declarations were introduced into the case as a part of an affidavit of the respondent put in evidence by the State ; also, as a part of sundry conversations which were proved.    The court instructed the jury that they might consider these declarations, and were authorized to find that such a divorce had been procured ; also, that if the respondent was informed that the Norton woman had been divorced from him, and used reasonable diligence and did all that they thought he reasonably ought to have done to ascertain the truth of the report, and, upon the information he obtained, honestly believed that she had procured a lawful divorce, and that he had no living wife during the time he cohabited with the Johnson woman as charged in the indictment, then it would be their duty to bring in a verdict of not guilty.

The respondent moves for a new trial on account of said ruling, and of the instructions as to the validity of the marriages, and also moves in arrest of judgment on the ground that the indictment contains no averment that the living wife therein mentioned and the said Charlotte M. Johnson are not one and the same person.    It distinctly appeared at the trial, and was not questioned, that the Norton woman, the Hudson woman, and the Johnson woman are three different persons.

*Wellington*, solicitor, for the State.

*Healey* (with whom was *Faulkner*), for the defendant.

LADD, J.    The first and most important question in the case is, whether there was evidence from which the jury might legally find the fact of a subsisting marriage between the defendant and some woman other than Charlotte M. Johnson, at the time of the cohabitation with said Johnson charged in the indictment.

At the trial, the prosecution seems to have started out with the idea of relying on proof of a marriage in fact with Jennie M. Hudson ; but, on cross-examination of the defendant, the State's counsel drew from

him the declaration that in the spring of 1864 he was married—legally married, as he supposed—to another woman, one Marietta Norton, by a justice of the peace in New York; and both Norton and Hudson being alive at the time of his cohabitation with Johnson, the defence take the ground that, no matter whether there was or was not evidence from which the jury could legally find the fact of marriage with Hudson, no matter with what due observance of all forms, civil or ecclesiastical, the rite was solemnized, it was no marriage, for the plain and sufficient reason that, being already at that same time once married to Norton, who was still in life, no form, no ceremony, no religious vow, no civil contract, could make Hudson his lawful wife, because two women cannot maintain that intimate relation with one man at the same time.

Thus far the defendant's legal position is certainly unassailable. But what next? It is plain that a marriage in fact with *Norton* is just as bad for the defendant's case as a marriage with *Hudson;* and so his counsel say,—and that is the argument of the brief, as I understand it,—that the defendant's testimony as to his marriage with Norton is not evidence from which the jury could legally find the fact of such marriage;—in a word, the contention is, that a marriage with Norton was sufficiently proved to render nugatory the evidence of a marriage in fact with Hudson, introduced by the State, but not to lay the foundation for a conviction upon this indictment;—that it was proved sufficiently to show that the defendant was guilty of bigamy in his marital relations with Hudson, but not sufficiently to show that he was guilty of the same crime with Johnson when he afterwards found it convenient to enlarge his connections by embracing her in his domestic establishment; which is obviously contending in the same breath that the fact of marriage with Norton was and was not proved by the defendant's testimony.

By our statute, " In actions for criminal conversation, and in indictments for adultery, bigamy, and the like, there must be proof of a marriage in fact." Gen. Stats., ch. 161, sec. 18.

Was there competent evidence from which the jury might find the fact of marriage here? First, how was it as to Hudson? She testified that on the third day of May, 1866, she was married to the defendant, at Binghampton, N. Y., by F. A. Durkee, a justice of the peace; and a copy of the marriage certificate given her by Durkee was produced. Durkee testified that he was a justice of the peace at that time, and was in the habit of solemnizing marriages, and that on that day he married Mrs. Hudson to a man calling his name Clark, but was of opinion that the defendant was not the man. Here is no dispute or discrepancy except as to the identity of the defendant, and that was clearly a matter for the jury.

This evidence shows a marriage ceremony duly performed by a person who was in fact a magistrate; and it is to be presumed that the magistrate acted within the scope of his legal power and authority until evidence to the contrary appears. The case comes fully within the doctrine of *State* v. *Kean*, 10 N. H. 347. Indeed, in that case it was

not shown either that the person who solemnized the marriage was in fact an ordained minister, or that, by the law of Maine, an ordained minister, or any minister, was authorized to solemnize marriages, although it did appear that he had for a long time officiated as a minister, and had married other persons. One objection, therefore, to the proof of marriage in *State* v. *Kean*, namely, that the official character of the person solemnizing it was not shown, does not exist here; while the other, that it did not appear that by the law of Maine a minister was authorized to solemnize marriage, which seems to be identical with that taken by the defendant here, was overruled, and the proof of marriage held to be sufficient. That case must therefore be regarded as decisive of the present, so far as regards the proof of marriage to Hudson. See Bish. M. & D., secs. 494, 495, 496.

But then comes the testimony of the defendant as to his marriage with Norton in 1864, and, as already observed, if the fact was as stated by him in reference to that marriage, the marriage with Hudson was no marriage at all, assuming that the tie had not been dissolved by death or a divorce.

But his counsel argue that his testimony is not sufficient proof of a marriage in fact with Norton. If that be granted, it follows that the marriage with Hudson was the earliest and in fact the only marriage proved, and the case of the State, so far as regards proof of marriage, was made out; but if, on the other hand, we are to take it that the testimony of the defendant himself showed the fact of a marriage with Norton, his predicament is not changed, the only effect of that testimony being to change the marriage which is made the basis of his conviction.

If we look now at the instructions to which exception was taken, their only fault seems to be that they were too favorable to the defendant. In the first place, we think there was no competent evidence whatever of a divorce between Norton and the defendant. Therefore, allowing that question to go to the jury with the instruction given as to the legal effect of a belief on the part of the defendant that such divorce had been procured, opened to him one independent ground of defence, to which he was not entitled upon the evidence.

But the court instructed the jury that they were authorized to find that the Norton marriage was a legal one. So far we have no doubt the ruling was correct. It stands substantially the same as the proof of the Hudson marriage, which has been already considered, except that it rested upon the testimony of one witness who was present at the ceremony,—that is, the defendant himself,—instead of two. It all depended upon whether the jury believed the testimony of the defendant. As to that marriage, the case is not to be distinguished from *State* v. *Kean*.

The jury were further instructed that they were authorized to find that the Hudson marriage was a legal one if the Norton woman had been lawfully divorced from the respondent previous to May 3, 1866. That the jury were authorized to find the fact of marriage with either

Norton or Hudson from the evidence reported, we have already seen. We also hold that there was no evidence of a divorce. Now, it is not possible to say but that the jury may have found a divorce, when there was no legal evidence to sustain such finding. What follows? Simply that the verdict may rest upon the fact of marriage with Hudson, when it should rest upon the fact of marriage with Norton; for if the jury found a divorce obtained by Norton, whether upon competent or incompetent evidence, they must of necessity have found the fact of marriage with Norton; and inasmuch as we hold that there was evidence upon which they could legally find such marriage, though not a divorce, the defendant's situation was not changed, and it seems to be matter of demonstration that he was not prejudiced. No matter which horn of the dilemma be taken, the fact of marriage was made out and was certainly found by the jury before they could return a verdict of guilty under the instructions; for the jury must certainly have found the fact of both marriages before they could find a divorce from the first wife and a marriage to the second. That is, if the narrowest and most restricted interpretation possible be put upon the instruction, and it be understood to mean that the jury could not find a marriage with Hudson unless they first found a divorce from Norton, it was too favorable to the defendant, because they might have disbelieved the defendant's testimony and found no marriage with Norton. It would follow that they could find no divorce, and then, that although there was abundant proof of marriage with Hudson, still they could not find the fact because they could not first find the fact of divorce procured by Norton prior to May 3, 1866, the date of the marriage with Hudson.

The jury were probably instructed that if there was no marriage with Norton there could be no divorce, and that in such case they would be at liberty to find a marriage with Hudson. But however that may have been, the only fault with the instructions clearly is, that they were too favorable to the defendant; and there can be no doubt but that the fact of marriage, as required by the statute, must have been and was found by the jury under instructions by which the defendant could not have been prejudiced. All it amounts to is, that the jury found the fact of both marriages when it was only necessary that they should find one.

The defendant excepted to the admission of two letters which the State claimed were written by him to Hudson. His own testimony and that of Hudson were directly in conflict. He swore he did not write the letters, and she swore they were in his handwriting, &c. It was competent for the jury to compare the letters with a writing of his admitted to be genuine, and the order in which the several steps were taken is of no consequence.

The remaining question is as to the sufficiency of the indictment. This question arises upon a motion in arrest of judgment, on the ground that the indictment contains no averment that the living wife therein mentioned, and the said Charlotte M. Johnson, are not one and the same person. The indictment is evidently framed upon sec. 5 of chap.

256 of the Gen. Stats., which enacts that "if any person having a husband or wife alive shall marry or cohabit with any other person, such person so marrying or cohabiting shall be punished," &c.

The indictment charges that the defendant has and still does lewdly and lasciviously associate and cohabit with one Charlotte M. Johnson, single woman, he, the said Thaddeus B. Clark, during all the time aforesaid being a married man, and having a lawful wife alive, &c. It is doubtless necessary that the indictment should set forth the offence in the language of the statute, or, at least, in terms equivalent. *State* v. *Gove*, 34 N. H. 510; and it is objected by the defendant's counsel in argument that the description of the offence is imperfect and insufficient in that respect, the words lewdly and lasciviously associate, not found in the statute, being inserted in the indictment. We think this objection is not well founded, for the reason that those words may be stricken from the indictment as surplusage, and there still remains a clear and distinct description of the statutory offence, charged in the very language of the statute, namely, that the respondent, on, &c., did and still does cohabit with one Charlotte M. Johnson, single woman, &c.

But the indictment does not allege, in so many words, that Charlotte M. Johnson, a single woman, was not the lawful wife of Thaddeus B. Clark, a married man; and this is the fault upon which the motion in arrest was based, and which is mainly insisted on now by the defendant in support of that motion.

The case shows that it distinctly appeared at the trial, and was not questioned, that Norton, Hudson, and Johnson were three different persons, and without this the verdict sufficiently settles the fact that Johnson was not the wife of the defendant Clark. Under these circumstances it would seem to be a waste of time to inquire whether a form, that appears to have been heretofore used and approved without objection, is strictly and technically perfect or not. The objection comes too late. If the averment that Thaddeus B. Clark, a married man, cohabited with Charlotte M. Johnson, a single woman, is not a sufficient allegation that Johnson is another person from the lawful wife of Clark, we think the defect is one of form, and open to amendment, under Gen Stats., ch. 242, sec. 13. It differs widely from the cases referred to in the defendant's brief, where the fault was in the description of the offence.

The exceptions must all be overruled, and there must be

*Judgment on the verdict.*